# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| BAKARI L. JEFFERSON,<br>*Plaintiff* | §<br>§<br>§ |
| v. | §    Case No. 1:19-CV-407-LY-SH<br>§ |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST D,<br>*Defendant* | §<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
    **UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant's Motion for Summary Judgment, filed on November 7, 2019 (Dkt. No. 10); Plaintiff's Response to Motion for Summary Judgment, filed on January 6, 2020 (Dkt. No. 21); and Defendant's Reply in Support of Summary Judgment Motion, filed on January 13, 2020 (Dkt. No. 22). On July 18, 2019, the District Court referred this case to the undersigned Magistrate Judge for Resolution and Report and Recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    BACKGROUND

This is Plaintiff Bakari Jefferson's ("Plaintiff") second lawsuit to prevent the foreclosure on his home located at 221 Peppergrass Cove, Kyle, Texas 78640 (the "Property").

On October 28, 2005, Plaintiff entered into a Note and Deed of Trust (the "Loan") with Alethes, LLC ("Alethes"), in which Plaintiff agreed to repay Alethes $137,458.00, plus interest. Dkt. No. 10-1 at p. 14-26. The Loan requires Plaintiff to make monthly payments beginning in

December 1, 2005, and continuing through November 1, 2035. *Id.* at p. 14. On April 1, 2008, Plaintiff entered into a Loan Modification Agreement with Alethes' successor in interest, GMAC Mortgage, LLC ("GMAC"), in which the parties agreed "to extend or rearrange the time and manner of payment of the Note." *Id.* at p. 32-36. On March 6, 2009, Plaintiff conveyed the Property to Peppergrass Land Trust, which subsequently conveyed it to Lisa Ann Ruiz. *Id.* at p. 88-94.

On June 1, 2011, Plaintiff defaulted on the Loan by failing to make the required monthly payments from June through August 2011. *Id.* at p. 66. On August 2, 2011, the loan servicer sent Plaintiff a Notice of Default, notifying Plaintiff that he had defaulted on his loan, but that he could cure the default by paying $4,523 for the past due monthly payments. *Id.* at p. 71 ("First Notice of Default"). Plaintiff was further warned that if he failed to cure the default, his Loan would be accelerated and the full amount of the Loan would be due, and that his Property would be subject to foreclosure. *Id.* On November 28, 2011, after failing to cure the default, the loan servicer notified Plaintiff that the Loan had been accelerated, and that the Property would be subject to foreclosure if he did not pay $133,912.88, the total amount due on the Loan. *Id.* at p. 76-78 ("First Loan Acceleration").

On January 3, 2012, Plaintiff filed his first lawsuit to challenge the foreclosure on the Property in the 428th Judicial District Court of Hays County, Texas. *See Jefferson v. GMAC Mortgage, LLC*, Cause No. 12-0004 (428th Dist. Ct., Hays County, Tex. May 24, 2018). In that lawsuit filed against GMAC, Alethes, and Mortgage Electronic Registration Systems, Inc. ("MERS"), Plaintiff alleged wrongful disclosure, violations of the Texas Debt Collection Act, and that the chain of assignments of the Deed of Trust was defective. After the defendants removed the case to federal court and the case was stayed for GMAC's bankruptcy proceedings, the District Court granted defendants' motion to dismiss under Rule 12(b)(6), dismissing Jefferson's lawsuit with prejudice.

*See Jefferson v. GMAC Mortgage*, No. 1:12-CV-270-SS (W.D. Tex. June 23, 2014) (Dkt. No. 38 in 1:12-CV-270-SS). Plaintiff did not appeal the District Court's ruling to the Fifth Circuit. GMAC subsequently assigned the Note and Deed of Trust to DLJ Mortgage Capital, Inc.

On October 5, 2015, the new mortgage loan servicer of the Loan, Select Portfolio Servicing, Inc. ("SPS"), sent Plaintiff a new Notice of Default notifying Plaintiff that he had again defaulted on the Loan. Dkt. No. 10-1 at p. 38 ("Second Notice of Default"). The Second Notice of Default further notified Plaintiff that if he did not make a payment $67,659.033 for the past amount due on the Loan by November 4, 2015, the Loan would be accelerated for the full amount due under the Loan, and the Property would be sold at foreclosure. *Id.* at p. 39. Because Plaintiff did not cure the default, on May 18, 2016, SPS again accelerated the Loan and notified Plaintiff that his Property would be subject to foreclosure unless he made a payment of $190,867.12, which was the total amount due under the Loan. *Id.* at p. 49 ("Second Loan Acceleration").

On September 11, 2018, the Deed of Trust on the Property was assigned to Defendant Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust D ("Defendant"). *Id.* at p. 86. On January 31, 2019, the current loan servicer, Carrington Mortgage Services LLC ("Carrington"), sent Plaintiff a Notice of Substitute Trustee Sale, notifying Plaintiff that the Property would be placed on the market for public auction on April 2, 2019. *Id.* at p. 56.

On April 1, 2019, Plaintiff filed the instant lawsuit in state court against Defendant, seeking a declaratory judgment that the four-year statute of limitations contained in Texas Civil Practice and Remedies Code § 16.035 expired in August of 2015 and thus the foreclosure is untimely. *See Jefferson v. Wilmington Sav. Fund Soc'y,* No. 19-0750 (207th Dist. Ct., Hays County, Tex. April 1, 2019) (Dkt. No. 1-2). That same day, the state court issued a Temporary Restraining Order enjoining Defendant from foreclosing on the Property. *See* Dkt. No. 1-3

On April 11, 2019, Defendant removed this case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a) and 1446(b). Defendant now has filed the instant Motion for Summary Judgment. Defendant argues that Plaintiff's claim that the foreclosure is time-barred under § 16.035 is baseless and that the foreclosure is not time-barred.

## II.   LEGAL STANDARDS

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party

4

opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.  ANALYSIS

Plaintiff asks this Court to enter a declaratory judgment stating that the four-year statute of limitations contained in Texas Civil Practice and Remedies Code § 16.035 bars Defendant from foreclosing on his Property. Specifically, Plaintiff argues that the statute of limitations under § 16.035 accrued on August 2, 2011,[1] when he contends the Loan was first accelerated. Thus, Plaintiff contends that Defendant only had until August 2, 2015[2] to foreclose on the Property, and therefore, the foreclosure sale scheduled for April 2, 2019 was untimely.

Defendant disagrees and contends that the statute of limitations did not accrue until May 18, 2016, when it accelerated the Loan for the second time. *See* Dkt. No. 10-1 at p. 49 (Second Loan Acceleration). Specifically, Defendant argues that it abandoned the First Loan Acceleration when it sent Plaintiff a *new* Notice of Default on October 20, 2015. *See id.* at p. 38. Thus, Defendant argues that the statute of limitations was reset when it abandoned the First Loan Acceleration and began to accrue again when it entered the Second Loan Acceleration on May 18, 2016.

---

[1] Plaintiff is mistaken that the First Loan Acceleration occurred on August 2, 2011. The First Loan Acceleration actually occurred on November 28, 2011, not August 2, 2011. *See* Dkt. No. 10-1 at p. 77. August 2, 2011 is the date that the loan servicer sent Plaintiff the First Notice of Default, not when the Loan was accelerated. *Id.* at p. 71.

[2] Again, Plaintiff is mistaken that August 2, 2015, would be the limitations deadline if Defendant did not abandon the First Loan Acceleration. Because the First Loan Acceleration occurred on August 2, 2011, the limitations period for filing a foreclosure would have expired on November 28, 2015, not August 2, 2015, again assuming Defendant did not abandon the First Loan Acceleration. *See* n.1 *supra*.

### A. The Law of Acceleration and Abandonment

Under Texas law, "[a] sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(b). "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(e). If the note or deed of trust "contains an optional acceleration clause," the limitations period begins to run "when the holder actually exercises its option to accelerate" by sending a notice of intent to accelerate and a notice acceleration. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

A holder, however, may abandon the acceleration. *See id.* at 566-67; *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015). "'Abandonment of acceleration has the effect of restoring the contract to its original condition,' thereby 'restoring the note's original maturity date' for purposes of accrual." *Boren*, 807 F.3d at 104 (quoting *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). The acceleration can be abandoned either by agreement or unilaterally by the holder, "so long[ ] as the borrower neither objects to abandonment nor has detrimentally relied on the acceleration." *Id.* at 104-05.

"Texas courts have framed the issue of abandonment of acceleration by reference to traditional principles of waiver." *Id.* at 105. Those elements include "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* "Waiver . . . can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." *Id.* at 106 (quoting *G.T. Leach Builders, LLC v.*

*Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015)). An example of waiver is where the lender "put[s] the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan." *Id.* (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 680 (5th Cir. 2015)); *see also Alcala v. Deutsche Bank Nat'l Tr. Co. for Long Beach Mortg. Loan Tr. 2006-5*, 684 F. App'x 436, 439 (5th Cir. 2017) (stating that "a noteholder may unilaterally abandon acceleration after its exercise 'by requesting payment on less than the full amount of the loan'") (quoting *Boren*, 807 F.3d at 106).

**B. Did Defendant Abandon the First Notice of Acceleration?**

Under Fifth Circuit and Texas law, Defendant abandoned its First Loan Acceleration in 2011 when it issued the Second Notice of Default in 2015. The Fifth Circuit's opinion in *Boren* and its progeny controls the outcome in this case.

In *Boren*, the Fifth Circuit addressed what is required for a lender to effectively unilaterally abandon an acceleration. The lender in *Boren* sent the borrowers a notice of acceleration without taking further action and then, a year later, sent a notice of default informing the borrowers of the total past due amount on their loan, stating that failure to pay this amount, which was less than the full balance of the loan, would result in acceleration. 807 F.3d at 106. The Fifth Circuit concluded that such conduct "unequivocally manifested an intent to abandon the previous acceleration and provided the [borrowers] with an opportunity to avoid foreclosure if they cured their arrearage." *Id.* Accordingly, the Firth Circuit found that the abandonment of the first acceleration of the loan reset the statute of limitations; the foreclosure claim did not accrue until the borrowers defaulted again and the bank exercised its right to accelerate the loan for the second time. *Id.*; *see also, e.g., Marsh v. U.S. Bank, N.A.*, 775 F. App'x 166, 167-68 (5th Cir. 2019); *DeFranceschi v. Seterus,*

7

*Inc.*, 731 F. App'x 309, 312 (5th Cir. 2018); *Alcala*, 684 F. App'x at 439-40; *Leonard*, 616 F. App'x at 679.

Similarly, the Court finds that Defendant abandoned the 2011 First Loan Acceleration when it sent Plaintiff the Second Notice of Default on October 20, 2015. As noted, the First Loan Acceleration notified Plaintiff that the Loan had been accelerated and demanded the full amount due on the Loan, which at that time was $133,912.88. *See* Dkt. No. 10-1 at p. 2. Four years later, however, on October 5, 2015, Defendant sent Plaintiff the Second Notice of Default asking Plaintiff to pay only $67,659.03 for the amount past due on the Loan in order to cure the default. *Id.* at p. 38-39. The Second Notice of Default did not request the full amount due on the Loan, which at that time was $190,857. In addition, the Second Notice of Default notified Plaintiff that if he did not pay $67,659.03 within 30 days of the notice, "the Noteholder *will accelerate* all payments owing on your Note and require that you pay all payments owing and sums secured by the Security Instrument in full." *Id.* at p. 39 (emphasis added). After Plaintiff failed to make any payment, on May 18, 2019, Defendant issued the Second Loan Acceleration notifying Plaintiff that he must immediately pay "[t]he entire amount of principal, interest fees on the Note . . . in the amount of $190,857.12." *Id.* at p. 49.

The Second Notice of Default clearly informed Plaintiff that the total amount necessary to bring his loan current was $67,659.03, the amount due under the original terms of the Note, and that Defendant *would* accelerate the maturity date of the loan *if* Plaintiff failed to pay this amount. "This notice unequivocally manifested an intent to abandon the previous acceleration and provided [Plaintiff] with an opportunity to avoid foreclosure if [he] cured their arrearage." *Boren*, 807 F.3d at 106; *see also Marsh*, 775 F. App'x at 168; *DeFranceschi*, 731 F. App'x at 312; *Alcala*, 684 F. App'x at 440; *Leonard*, 616 F. App'x at 679; *Brannick v. Aurora Loan Servs., LLC*, 2018 WL

5729104, at *3 (Tex. App.—Austin Nov. 2, 2018, pet. denied); *Farmehr v. Deutsche Bank Nat'l Trust Co.*, 2018 WL 2749634, at *4 (Tex. App.—Dallas May 31, 2018, no pet.).[3] As a result of this abandonment, the statute of limitations under § 16.035 was reset and did not begin to run until the Second Loan Acceleration was issued on May 18, 2016. Accordingly, Defendant has until May 18, 2020, to seek the foreclosure of the Property, and the foreclosure on April 2, 2019 was not untimely.

Based on the foregoing, Plaintiff's sole claim that the foreclosure is time-barred is without merit, and Defendant's Motion for Summary Judgment should be granted.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 10) and **DISMISS** Plaintiff's lawsuit with prejudice.

---

[3] Plaintiff's Response fails to address *Boren*, or any of the other case law cited above. Instead, Plaintiff simply argues that Defendant's conduct "is insufficient to show rescission of acceleration," citing *Brannick*, 2018 WL 5729104, and *Pitts v. Bank of New York Mellon Tr. Co.*, 583 S.W.3d 258, 265 (Tex. App. 2018), neither of which support his argument that Defendant's foreclosure is time-barred. First, Plaintiff's brief erroneously states that the court in *Brannick* "found that waiver and rescission had not occurred." Dkt. No. 21 at p. 3. The *Brannick* court did not make such a finding; rather, the court held that the lender had abandoned its prior acceleration and reinstated the loan when it sent the plaintiff a letter notifying him that it would accept payment of less than the full amount due on the loan. *Brannick*, 2018 WL 5729104, at *3. Plaintiff also relies on *Pitts*, 583 S.W.3d at 265, in which the court held that there was a fact issue regarding whether the mortgagee had abandoned its first acceleration of the mortgagor's loan because the second default notice "contained no language similar to that in *Boren* and the cases following *Boren* stating that if Castle Mortgage did not pay the amount demanded, then the loan would be accelerated." Unlike in *Pitts*, the Second Notice of Default clearly notified Plaintiff that if he did not cure the default, the Loan would be accelerated. As the *Pitts* court stated: "Language stating that the loan would be accelerated is inconsistent with an earlier notice of acceleration and clearly establishes the noteholder's abandonment of the earlier acceleration because, if the noteholder intended to rely on the earlier notice of acceleration, it would not state that acceleration could occur in the future." *Id.* Accordingly, Plaintiff's reliance on *Pitts* is misplaced.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 22, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE